UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TRACEY BARNETT, Individually and
as Next Friend for A. P. and I. P., Minors,

Plaintiffs,

Case No.

-v-

Hon.

CATHERINE ALAWI and
TREE CITY PROPERTIES, L.L.C.,
A Michigan for Profit Limited
Liability Company
Jointly and Severally,

Defendants.

_____/

JONATHAN G. WEBER (P-39712)
Attorney for Plaintiffs
606 East Cross Street
Ypsilanti, MI 48198
(734) 323-2535
webreal@sbcglobal.net
_____

**<u>COMPLAINT</u>**

**<u>COMMON ALLEGATIONS</u>**

**PARTIES**

1.  Plaintiff Tracey Barnett is the mother of Plaintiffs A. P. and I. P., minors.

2.  Plaintiffs are citizens of the United States and presently reside in Newberry,

Florida.

3.  Defendant Catherine Alawi resides in Washtenaw County, Michigan.

4.   Ms. Alawi is the owner and manager of an apartment building located at 915 Greenwood, Ann Arbor, Michigan, (hereinafter the "Property"), in Washtenaw County in the Eastern Judicial District of Michigan.

5.   Ms. Alawi is the sole member, manager, agent, and resident agent for Defendant Tree City Properties L.L.C., A Michigan for Profit Limited Liability Company located and doing business in Washtenaw County, Michigan.

6.   This cause of action arose in Washtenaw County, Michigan.

## JURISDICTION

7.   Jurisdiction is vested in this Court by virtue of the United States Constitution Article III, Sec. 2; by the Fair Housing Amendments Act of 1988, 42 U.S.C. 3601 *et seq*, by 42 U.S.C. 3613, by 28 U.S.C. Sec. 1331 (civil action arising under a law of the United States); by 28 U.S.C. Sec. 1343 *et seq* (civil action to recover damages or injunctive relief under civil rights laws); and by this Court's pendant jurisdiction.

## VENUE

8.   Venue in this action is vested in this Court by virtue of 28 U.S.C. Sec. 1391(b), because the Defendants reside and do business in the Eastern District of Michigan and the claim arose in the Eastern District of Michigan.

## COMMON FACTS

9.   Plaintiff Tracey Barnett is an Assistant Professor of Public Health at the University of Florida, located in Gainesville, Florida.

10. In November of 2011, Dr. Barnett received a faculty enhancement award from the University of Florida to attend eight weeks of seminars from June until August of 2012 at the

Inter-university Consortium for Political and Social Research (ICPSR), a unit of the Institute for

Social Research at the University of Michigan, located in Ann Arbor, Michigan.

      11. In April of 2012, Dr. Barnett began looking for an apartment to rent near the

University of Michigan's Central Campus in Ann Arbor for herself and her two children aged at

that time 8 and 5 years old.

      12. Dr. Barnett's priority in searching for housing was to find a furnished two

bedroom apartment close to campus to rent for two months while she attended her seminars.

      13. The search for such housing proved difficult, but she was able to locate two such

apartments in early June 2012.

      14. Dr. Barnett arranged to have her cousin, Bethany Boomer, a Michigan resident,

view the two apartments on June 6, 2012, and report back to her, which Ms. Boomer did.

      15. During the tour of 915 Greenwood #3, Ann Arbor, Michigan, Defendant

Catherine Alawi of Defendant Tree City Properties made comments to Ms. Boomer regarding

her concerns about renting the apartment to a family with children.

      16. On June 7, 2012, Dr. Barnett e-mailed Ms. Alawi that she had chosen to rent the

apartment located at 915 Greenwood for two months beginning on June 15, 2012, and asked Ms.

Alawi how they should proceed.

      17. On June 7, 2012, Ms. Alawi e-mailed Dr. Barnett that she could rent the unit for

that time period for $2,000.00 and that she would have to submit an application.

      18. On June 8, 2012, Dr. Barnett e-mailed Ms. Alawi an application, asked if Ms.

Alawi needed more information, and offered to pay a deposit to hold the apartment for her and

her children.

19. On a short timetable and having not heard back from Ms. Alawi, Dr. Barnett e-mailed her again on June 9, 2012, asking for confirmation that Ms. Alawi had received her rental application, assuring her that Plaintiff's credit will check out fine and asking if there were other interested applicants, to which Ms. Alawi later that day e-mailed back simply: "I received it. How many occupants will there be?"

20. Dr. Barnett immediately responded that she would reside there with her two daughters, ages 8 and 5, for a total of three occupants.

21. On June 11, 2012, again having not heard back from Ms. Alawi and with her moving date fast approaching, Dr. Barnett e-mailed Ms. Alawi informing her that the University of Florida would be paying her rent, that she would like to take care of the paperwork as soon as possible, and asking if there was a problem with her application.

22. On June 12, 2012, Ms. Alawi e-mailed Dr. Barnett the following: "I'm sorry for taking so long, but I had to check with the city to see if it is permissible to have three occupants in this apartment. Unfortunately the bedrooms are not of sufficient size to allow more than two occupants."

23. Promptly after receiving Ms. Alawi's June 12, 2012 e-mail, Dr. Barnett e-mailed her back asking if she had informed the City that the girls were not adults, that she thought the "city rule" sounded like it discriminated against families with children, and asking: "Which department do you deal with there?"

24. Dr. Barnett never received a response and she and her daughters had to scramble to have any place to stay after their June 15, arrival in Ann Arbor.

25. The Property remained available thereafter and was rented to tenants without children in their household.

26. On or about June 15, 2012, Dr. Barnett, believing that she may have been discriminated against by Defendants because of her familial status, contacted the Fair Housing Center of Southeastern Michigan (hereinafter "FHC"), located in Ann Arbor, Michigan.

27. FHC is a Michigan nonprofit corporation formed in 1991 with its principal place of business at 300 North Fifth Avenue, Ann Arbor, Michigan.  FHC is a membership organization that includes individuals, and business, community, educational and other organizations.  Its purpose is to support and encourage equal housing opportunities in Ingham, Livingston, Jackson, Washtenaw, Lenawee and Monroe counties and other communities.  FHC's activities include (a) assisting in the investigation of complaints of unlawful housing discrimination; (b) referring housing discrimination complaints to appropriate agencies or legal resources for action; (c) initiating negotiations, conciliations, and litigations to help resolve fair housing disputes; and (d) providing fair housing education and information to housing consumers and housing providers.  All of FHC's programs are designed to protect the rights of persons to fair housing opportunities without discrimination because of race, religion, color, familial status, national origin, age, sex, marital status, or disability.

28. The FHC conducted an investigation on Dr. Barnett's complaint.

29. On or about June 19, 2012, an FHC employee went to the Ann Arbor Department of Community and Building Services and informed the clerk that he was interested in finding out the occupancy maximum on a specific property, and the clerk informed him that the City of Ann Arbor keeps a register of rentals which states the maximum occupancy standards for each rental unit.

30. Upon request, the FHC employee gave the address of the Property, 915 Greenwood, and told the FHC employee that the maximum occupancy for the two bedroom apartment was three unrelated people.

31. Upon further questioning, the FHC employee was told that there was no limit on related people, such as parents and their children, stating that it doesn't matter how many related people are in the unit, "4 or 27."

32. Catherine Alawi is an experienced Landlord who owns and/or manages dozens of apartments in Ann Arbor.

33. As a result of Defendants' rejection of Plaintiffs' application, Plaintiffs endured two months at various family and friends' homes where they often disrupted and stressed; sleeping in basements and other less appropriate locations, and having to travel much greater distances at times.

34. As a result of Defendants' discriminatory acts, Plaintiffs were deprived of the housing of their choice.

35. Plaintiffs were deprived of their civil rights by Defendants due to Plaintiffs' familial status.

36. Defendants intentionally and maliciously refused to rent and refused to negotiate, or otherwise made unavailable or denied housing to the Plaintiffs because of their familial status.

37. Defendants made statements with respect to the rental of dwellings indicating a preference, limitation or discrimination based on familial status.

38. As a direct result of Defendant's acts, Plaintiffs have suffered, without limitation thereto, loss of civil rights, emotional distress, mental anguish, inconvenience, humiliation, embarrassment, and time and money spent.

.

## COUNT I

## VIOLATION OF THE FAIR HOUSING ACT, 42 U.S.C. 3601, *et. seq.*

39.  Plaintiffs re-allege and incorporate by reference Paragraphs 1-38 above as if fully set out herein.

40.  Plaintiffs have the right to be free from familial status discrimination in the provision of housing.

41.  Plaintiffs have the right to the same treatment in the provision of, negotiation about, and the receipt of truthful information about the availability of rental housing as is enjoyed by persons who do not have minor children, or have fewer minor children in their household.

42.  The actions of Defendants in refusing to rent, to negotiate about renting, and to provide truthful information about the availability of rental housing with respect to Plaintiffs, deprived Plaintiffs the right, as citizens of the United States, to rent real estate, and the right to enjoy the same rights as persons who do not have minor children in their household.

43.  Defendants' actions are the legal and proximate cause of the damages that Plaintiffs suffered including, without limitation thereto, loss of civil rights, emotional distress, mental anguish, inconvenience, humiliation, embarrassment, and time and money spent.

## COUNT II

## VIOLATION OF THE MICHIGAN ELLIOTT-LARSEN CIVIL RIGHTS ACT

44.  Plaintiffs re-allege and incorporate by reference Paragraphs 1-43 above as if fully set out herein.

45. Defendants unlawfully discriminated and committed unfair housing practices against Plaintiffs on the basis of familial status as described above, in violation of MCL 37.2101, *et seq*.

46. Defendants' actions are the legal and proximate cause of the damages that Plaintiffs suffered including, without limitation thereto, loss of civil rights, emotional distress, mental anguish, inconvenience, humiliation, embarrassment, and time and money spent.

## RELIEF AND DAMAGES

Plaintiffs re-allege and incorporate by reference Paragraphs 1-46 above as if fully set out herein.

WHEREFORE, Plaintiffs demand judgment against Defendants and ask that this Court enter an order as follows:

      i.     Award Plaintiffs judgment for the damages to which Plaintiffs are entitled, plus interest, costs and attorney fees.

      ii.    Upon any trial on the merits, that this Court award Plaintiffs judgment for the damages to which Plaintiffs are entitled, plus interest, costs and attorney fees.

      iii.   Award Plaintiffs damages, both compensatory and punitive damages, in an amount necessary to compensate Plaintiffs and to insure that such actions complained of herein will not recur.

      iv.   Award Plaintiffs reasonable attorney fees.

      v.    Declare that the discriminatory housing practices of the Defendants, as set forth above, violate the Fair Housing Act, as amended, 42

U.S.C. 3601, *et seq.*, and the Michigan Elliott-Larsen Civil Rights Act, MCL 37.2101, *et seq.*

  vi. Enjoin the Defendants, their agents, employees, and successors, and all other persons acting in concert or participation with the Defendants from:

1.  Discriminating on the basis of familial status against any person in any element of the rental of a dwelling;

2.  Failing or refusing to notify the public that dwellings owned or operated by the Defendants are available to all persons on a non-discriminatory basis and;

  vii. Award Plaintiffs punitive damages, if the conduct of the Defendants is found to be intentional and malicious or in reckless or callous disregard of Plaintiffs' rights.

  viii. Grant such other relief as may be appropriate under all of the circumstances herein as may be just and equitable.


  Respectfully submitted,

             /s/ Jonathan G. Weber
             By:  Jonathan G. Weber (P-39712)
             Attorney for Plaintiffs
             606 East Cross Street
             Ypsilanti, MI 48198
             E-mail: webreal@sbcglobal.net
             (734) 323-2535

December 19, 2012